UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Coloplast A/S,

    Plaintiff,

v.

Caldera Medical, Inc.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 20-2205 (MJD/HB)

    David R. Marshall, Leah C. Janus and Amanda M. Mills, Fredrikson & Byron, P.A., Counsel for Plaintiff.

    Courtland C. Merrill, Steven M. Pincus and Joseph T. Janochoski, Anthony Ostlund Baer & Louwagie P.A., Counsel for Defendant.

This matter is before the Court on Defendant Caldera Medical, Inc.'s ("Caldera") motion to compel arbitration.  [Doc. No. 18]

**I.    Background**

This case arises from a dispute between Caldera and Plaintiff Coloplast A/S ("Coloplast") concerning payments allegedly owed to Caldera under the parties' 2007 Intellectual Property Assignment Agreement ("IP Assignment"). Pursuant to that agreement, Caldera sold and assigned to Coloplast certain intellectual property rights related to a male stress urinary incontinence sling

product (the "Product") in exchange for certain payments.  (Comp., Ex. A ("IP Assignment at § 2.1).)  The IP Assignment further provides that Coloplast must make "earn-out" payments to Caldera when Coloplast hits certain sales metrics of the Product.  (See Id. at § 3.3.)  In 2019, Caldera asserts that Coloplast met one of those goals, triggering a $1 million earn-out payment to Caldera.  Caldera asserts that Coloplast refuses to make this payment, claiming the IP Assignment was terminated by a later agreement between the parties.  Caldera disputes the IP Assignment was terminated.

The IP Assignment includes an arbitration provision whereby the parties agreed to arbitrate disputes related to the breach of, or termination of, the IP Assignment.  (IP Assignment, Ex. 9.7 at ¶ 2 ("Any and all claims, disputes, controversies, and other matters arising out of or relating to [the IP Assignment], including but not limited to the . . . breach . . . or termination thereof . . . shall be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.").)  The parties also agreed that the determination of arbitrability of an issue or dispute shall be made by the arbitrator.  (Id.)

Caldera initiated an arbitration against Coloplast, but Coloplast refused to participate, asserting it has no obligation to do so because the IP Assignment has already been terminated.  Thereafter, Coloplast filed this action, seeking an order staying or dismissing the arbitration and a declaration that Coloplast is not obligated to make further payments to Caldera under the IP Assignment.

Relevant to the merits of this motion are other agreements entered into between the parties.  In 2007, the parties entered into a Patent License Agreement ("2007 Patent License Agreement") by which Caldera was granted a non-exclusive license to certain Licensed Patents owned by Coloplast in exchange for the payment of royalties to Coloplast.  (Comp. Ex. 2.)  This agreement does not involve the Product that is at issue in the IP Assignment.

In March 2015, the parties began a dispute as to whether Coloplast was entitled to terminate the 2007 Patent Agreement.[1]  Eventually, the disputes were settled and the parties entered into a Settlement Agreement.  (Comp. Ex. B (2015 Settlement Agreement).)  The parties agreed to release one another for claims

---

[1] These disputes involved a number of product liability suits against Caldera regarding injuries related to pelvic products manufactured and distributed by Caldera under 2007 Patent Agreement ("TMV Litigation").  Coloplast was named as a defendant in those cases, based on a theory of liability arising from the contractual relationship between Caldera and Coloplast.

3

arising out of the TMV litigation. (Id. at §§ 2.1.A, 2.2.A.) The 2015 Settlement Agreement further provided the Releases set forth in paragraph 2 "do not and are not intended to . . . (iv) waive any royalty and/or other consideration payments that either Party is required to pay to the other pursuant to the terms of the Patent License Agreement dated September 13, 2007, by and between Coloplast and Caldera (the "Patent License Agreement") or the Intellectual Property Assignment Agreement, dated September 13, 2007, by and between Coloplast and Caldera (the "IP Assignment Agreement") . . . " (Id. at ¶ 5.)

After the 2015 Settlement Agreement was entered into, the parties continued to have disputes relating to the 2007 Patent License Agreement, and Coloplast sued Caldera for alleged infringement of three patents unrelated to the Product at issue in the IP Assignment. (See Compl., Coloplast A/S v. Caldera Med., Inc., No. 16-cv-1739 (PJS/FLN (D. Minn. Filed May 15, 2016)). Caldera asserts there is no reference to the IP Assignment in that complaint, or in its Answer or Counterclaims, and the suit did not relate to the Product assigned to Coloplast under the IP Assignment.

In 2017, the parties entered into a settlement, in which the parties agreed to dismiss the 2015 arbitration and the 2016 lawsuit that involved the 2007 Patent

4

License Agreement.  (Comp. Ex. C ("2017 Settlement Agreement").)  As set forth in this agreement, the parties agreed the 2007 Patent License Agreement was terminated, effective March 20, 2015, and that Caldera agreed to release Coloplast from any all "claims, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, and damages, whether known or unknown, suspected or unsuspected, fixed or contingent, which [Caldera] ever had, now have, may have, or might ever have from the beginning of the world through and including the Effective Date[.]"  (Id. at ¶ 3.2.)  Caldera also agreed to make certain payments to Coloplast totaling $2.25 million.  (Id. at ¶ 1.4.)

> Section 4.2 of the 2017 Settlement Agreement further provided:
>
> The Parties expressly agree that the releases set forth in Paragraph 3 above, do not and are not intended to release any rights or obligations under the [2015 Settlement], other than the exclusions found in Paragraphs 5(iii), (iv), (v), or (vi) of the 2015 [Settlement] which the parties acknowledge are superseded by this Agreement.

The 2017 Settlement Agreement further provides that the settlement "supersedes any prior agreement . . . that may have related to the subject matter hereof . . . and that this Agreement . . . constitutes the entire agreement between the Parties with respect to the subject matter hereof."  (Id. at ¶ 10.)  The agreement further clarified that:

5

> For the avoidance of doubt, (i) the 2015 Release Agreement (other than the exclusions found in Paragraph 5(iii), (iv), (v) or (vi) of the 2015 Release Agreement which the parties acknowledge are superseded by this Agreement) and (ii) any other document executed or delivered contemporaneously herewith, remain in full force and effect.

(Id. ¶ 10(i)-(ii).)

The 2017 Settlement Agreement did not contain an arbitration provision, but provided that any action arising out of or relating to such agreement would be brought "exclusively in the United States District Court for the District of Minnesota." (Id. at ¶ 13.2.)

Caldera asserts the 2017 Settlement Agreement only released Caldera's claims related to the litigation contemplated within the agreement itself and did not impact any future obligations Coloplast might have under the IP Assignment. Caldera argues this is supported by the fact that the IP Assignment was not referenced in the 2017 Settlement nor was the Product assigned in the IP Assignment ever mentioned. The parties' binding term sheet is also silent as to the IP Assignment. (Comp. Ex. D – Caldera AAA Statement of Claim Ex. 5 at 89-92.)

Caldera further asserts there is evidence that Coloplast did not consider the IP Assignment terminated given the fact that Coloplast continued to send

6

Caldera sales and financial records related to the Product after the 2017 Settlement Agreement had been executed. (Merrill Decl., Exs. A and B.)

On September 28, 2020, Caldera initiated an arbitration proceeding against Coloplast with the American Arbitration Association ("AAA") pursuant to Exhibit 9.7 of the IP Assignment. (Comp. Ex. D.) In its statement of claim, Caldera asserted three counts: 1) breach of contract (IP Assignment) arising out of Coloplast's refusal to pay the $ 1 million earn-out payment; 2) declaration of rights under the IP Assignment, seeking a declaration that the IP Assignment remained valid and enforceable; and 3) in the alternative, contract reformation of the 2017 Settlement Agreement based on mutual mistake, to the extent the 2017 Settlement Agreement could be interpreted as having terminated the IP Assignment. (Id. at 10-13.)

Coloplast has refused to participate in the arbitration, claiming the dispute involves the meaning of the 2017 Settlement Agreement, and that such dispute must be resolved before this Court. The arbitration proceeding is thus being held in abeyance. Following Caldera's arbitration demand, Coloplast has filed this action seeking a declaratory judgment that pursuant to the 2017 Settlement Agreement, Coloplast has no further obligations to Caldera under the IP

Assignment and the arbitration provision contained in the IP Assignment does not apply to this dispute.

## II. Motion to Compel

### A. Standard

Arbitration is a matter of contract between the parties, and a court can only compel arbitration of claims that the parties have agreed to arbitrate. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

The validity of an arbitration agreement is determined by state contract law. Wold v. Dell Fin. Services, L.P., 598 F. Supp. 2d 984, 986 (D. Minn. 2009) (citing Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001)). Under Minnesota law, a written agreement to arbitrate is presumptively valid, enforceable and irrevocable. Cmty. Partners Designs, Inc. v. City of Lonsdale, 697 N.W.2d 629, 632 ( Minn. Ct. App. 2005); Minn. Stat. § 572B.06(a) ("An agreement contained in a record to submit to arbitration any existing or

subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of contract.").

Next, the Court must determine whether the parties agreed to arbitrate certain claims.  Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010) (citing Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002)).  When the parties "delegate[] the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. 524, 529 (2019) (rejecting the "wholly groundless" exception to arbitrability and requiring courts to enforce arbitration agreements according to its terms).

### B.   Discussion

The first inquiry is whether there is a valid agreement to arbitrate.  See Express Scripts, Inc. v. Aegon Direct Marketing Services, Inc, 516 F.3d 695, 700 (8th Cir. 2008) (finding the validity of the agreement to arbitrate – exclusive of the dispute over its continued viability -  was easily resolved as the parties did not dispute that the arbitration agreement was, at some point, valid and enforceable).

Based on the record before it, Coloplast does not dispute that at one time, the arbitration agreement was valid. Rather, it is Coloplast's position that the arbitration agreement is no longer enforceable as it was terminated pursuant to the 2017 Settlement Agreement.

Because the IP Assignment's arbitration provision is a valid agreement to arbitrate, the Court next looks to the language of the agreement to determine whether the specific dispute falls within that agreement. Express Scripts, 516 F.3d at 699. Here, the parties dispute the scope of the arbitration provision and whether it shows whether the parties agreed to have an arbitrator resolve arbitrability.

Here, it is clear the parties agreed to delegate arbitrability to the arbitrator. "Any determination as to the arbitrability of an issue or dispute shall be made by the arbitrator." (IP Assignment, Ex. 9.7 at ¶ 2.) In addition, the arbitration provision expressly incorporates "the Commercial Arbitration Rules of the American Arbitration Association" which in turn give the arbitrator the authority to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Merrill Decl. Ex. D ("AAA Comm.

Arb. Rules").)  The Eighth Circuit has held that incorporating the AAA Rules is a clear indication of the parties' intent to reserve the question of arbitrability for the arbitrator.  Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009).

The parties also agreed that "[a]ny and all claims, disputes, controversies, and other matters arising out of or relating to this Agreement, including but not limited to the . . . termination thereof . . . shall be resolved by binding arbitration[.]"  (IP Assignment, Ex. 9.7 at ¶ 2.)  Thus, the issue of whether the IP Assignment has been terminated has been expressly reserved by the parties for the arbitrator, not the Court.  See Purex Corp. v. Automotive, Petroleum & Allied Indus. Empls. Union, Local 618, 705 F.2d 274, 277 (8th Cir. 1983) (noting that "issues of contract termination or expiration are for judicial decision, not arbitration, unless the parties have agreed to arbitrate such issues"); Int'l Union, United Auto. Workers v. Int'l Tel. & Tel. Corp., 508 F.2d 1309, 1314 (8th Cir. 1975) (same); Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co., 832 F.2d 507, 510 (9th Cir. 1987) (finding a court may not decide a merits question that the parties have delegated to an arbitrator).

Because the arbitration provision is valid, and clearly provides the issue of termination of the IP Assignment shall be determined by binding arbitration, the Court will stay this matter and compel arbitration.

IT IS HEREBY ORDERED that:

1. Defendant Caldera Medical, Inc.'s Motion to Compel Arbitration and Stay Case [Doc. No. 18] is GRANTED;

2. Plaintiff Coloplast A/S is compelled to arbitrate claims set forth in Defendant's State of Claim and Demand for Arbitration (Comp. Ex. D) before the American Arbitration Association; and

3. Further proceedings in this case are STAYED pending further order of this Court.

Date: March 12, 2021                    s/Michael J. Davis
                                               Michael J. Davis
                                               United States District Court